# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIE RUTH BUYCK,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-01688 CKD<br><br><br><u>ORDER</u> |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

<u>BACKGROUND</u>

Plaintiff, born in 1958, applied on September 16, 2015 for Title II disability insurance benefits, alleging disability beginning January 8, 2015. Administrative Transcript ("AT") 21, 30. Plaintiff alleged she was unable to work due to memory problems and the inability to find words

1

when speaking. AT 116. In a decision dated the ALJ determined that plaintiff was not disabled.[1]

AT 21-31. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since January 8, 2015, the alleged onset date.
>
> 3. The claimant has the following severe impairments: borderline intellectual functioning, anxiety disorder, depressive disorder, personality disorder, and obesity.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is precluded from climbing ladders, ropes, and scaffolds, and from working around hazards, including dangerous moving machinery and unprotected heights. She must avoid concentrated exposure to pulmonary irritants, including fumes, dust, gases, odors, and poorly ventilated areas. She is limited to performing simple, routine, and repetitive tasks. She is limited to no more than occasional interaction with supervisors, coworkers, and the public. She is precluded from work at a production pace, such as sustained fast-paced activity or work with requirements for meeting explicit quotas, deadlines, or schedules, but work at a normal production pace is not ruled out.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1958, which is defined as an individual of advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 8, 2015 through the date of this decision.

AT 23-31.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the medical opinion evidence; and (2) the ALJ erred in discounting plaintiff's subjective statements.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff asserts that the ALJ erred in rejecting the opinions of consultative examiner Dr. Herrera and treating psychologist Dr. Rizvi.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1. Dr. Herrera

Clinical psychologist Dr. Guillermo Herrera performed a psychological consultative evaluation of plaintiff in March 2016 at the request of the State agency. AT 550-558. He noted that plaintiff had never been psychiatrically hospitalized, had not received psychotherapy in the past year, and was not currently being treated for mental health. AT 551. He noted that she appeared sad and tearful, but was otherwise coherent, organized, cooperative, alert, oriented to the circumstances, and had intact judgment and insight. AT 550-554. "The Mental Status Exam is within normal limits, except for sad mood, labile affect, feelings of hopelessness, helplessness, and worthlessness, presents with low average intellectual functioning impacted by poor attention, concentration and memory problems, especially if under stress or time constraints," Dr. Herrera concluded. AT 554.

In his functional assessment, Dr. Herrera opined that plaintiff was moderately impaired in her ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and perform work activities without special or additional supervision. AT 557. Dr. Herrera also found plaintiff moderately impaired in her ability to accept instructions from supervisors, interact with coworkers and the public, and deal with the usual stresses of work. AT

557.

Dr. Herrera found plaintiff markedly impaired in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric conditions. AT 557. Explaining this point, Dr. Herrera wrote:

> There is a good probability that claimant will maintain regular attendance, but she will not be able to perform activities on a constant basis due to her current performance anxiety which greatly impacts her attention, concentration, and memory abilities, along with exacerbating depressive symptomatologies. Claimant needs medication and psychotherapy in order to reduce current depression, increase self-worth and then she will be able to start tackling part time work responsibilities.

AT 557.

After summarizing Dr. Herrera's March 2016 opinion, the ALJ addressed it as follows:

> The undersigned agrees in part with Dr. Herrera's opinion. As discussed above with respect to residual functional capacity, the undersigned agrees that the claimant has moderate limitations in mental functioning. <u>However, the undersigned disagrees that the claimant has marked limitation in her ability to complete a normal workday or workweek.</u> Moreover, contrary to his marked limitation, Dr. Herrera subsequently noted that there was a 'good probability' that the claimant would be able to maintain regular attendance, but that she would have performance anxiety that would impact her attention, concentration, and memory ability (Exhibits 3F and 4F). The undersigned finds that the [RFC] preclusion from work at a production pace sufficiently accounts for her symptoms and limitations. Thus the undersigned gives this opinion partial weight.

AT 29 (emphasis added), citing AT 557.

The ALJ discussed two contradictory medical opinions in the record, noting that State agency consultants Dr. Daniel Gross and Dr. F.L. Williams

> reviewed the claimant's medical records and issued opinions relating to the claimant's mental limitations in April 2016 and July 2016, respectively. Drs. Gross and Williams agreed and opined that the claimant was limited to simple, routine, and repetitive tasks, and could 'deal with some changes' in a routine work setting, and could 'respond appropriately to supervision, coworkers, and work situations.'

AT 29, citing AT 126-130, 132-145. In his April 2016 assessment, Dr. Gross opined that the consultative examiner's (i.e., Dr. Herrera's) opinion "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of evidence does not

6

support the opinion. The CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations." AT 128. In a June 2016 assessment, Dr. Williams agreed with this evaluation. AT 142-143. The ALJ did not fully credit these opinions, finding them "somewhat under-restrictive in terms of social limitations" and "vague in terms of 'dealing with changes.' Thus, the undersigned gives these opinions reduced weight and finds that the residual functional capacity sufficiently accounts for the claimant's severe impairments and associated limitations." AT 29-30.

In sum, the ALJ concluded the RFC "is supported by the evidence record, hearing testimony, and the partial opinion of Dr. Herrera and moderate level GAF scores." AT 30. Dr. Herrera assessed plaintiff with a Global Assessment Functioning (GAF) score of 60, indicating moderate difficulty in, e.g., social functioning.[2] AT 556. The ALJ's decision also noted multiple mental status exams that "generally showed that [plaintiff] was alert, oriented, and cooperative with grossly normal speech"; testimony that she had no problems getting along with family and a neighbor; and testimony that she "had relatively good activities of daily living, including the ability to independently provide for her personal care, prepare simple meals, and perform household chores."[3] The decision also noted plaintiff's testimony that she avoided social situations and had difficulties getting along with coworkers; her reports of crying spells and difficulties handling stress; and exam notes that she had concentration problems, as set forth above. AT 25; see AT 73-114 (hearing testimony). Based on the above, plaintiff has not shown that the ALJ erred by giving only partial credit to Dr. Herrera's opinion in resolving conflicts in the evidence as to mental RFC. See 20 C.F.R. §§ 404.1545(a)(1).

////

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

[3] AT 25; see AT 417, 427-428, 446, 458, 470, 512, 520, 529, 532, 536, 552-554, 594, 597, 601, 613.

7

2. Dr. Rizvi

Dr. Saba Rizvi, a psychologist, began treating plaintiff for depression in June 2015, after she was laid off from her job at a winery. AT 728; see AT 89-91. In a letter dated December 14, 2017, Dr. Rizvi wrote a "letter in support of [plaintiff's] disability application" which stated in part:

> She has been treated for Major Depression with medications. She presented after losing her work due to increase in symptoms of depression. She couldn't focus, experienced increase [sic] anxiety, inability to handle stress and people. She needed frequent time off work.

AT 728.

Addressing this opinion, the ALJ wrote: "The undersigned finds this opinion to be vague as to the claimant's abilities and limitations, mainly referring to past issues that are likely based on the claimant's subjective complaints. Accordingly, the undersigned gives this opinion little weight." AT 29. In a finding challenged by plaintiff, the ALJ found her to be less than fully credible, as her subjective statements about her symptoms "are not entirely consistent with the medical evidence and other evidence the record[.]" AT 27. As set forth below, the undersigned finds no error as to the ALJ's credibility determination. Moreover, while Dr. Rizvi apparently believed that plaintiff stopped working in 2014 due to mental health symptoms, plaintiff testified that she and other "general light workers" were let go when the winery eliminated that position. AT 91.

Given the brevity and vagueness of Dr. Rizvi's letter and the fact that his treatment notes largely concern her subjective statements, plaintiff has not shown error in the ALJ's discounting of this opinion for the reasons stated. See Meanel, 172 F.3d at 1113 (treating physician's conclusory, minimally supported opinion rejected).

B. Credibility

Plaintiff next asserts that the ALJ improperly discounted her subjective complaints. In particular, she argues that the ALJ erred in failing to acknowledge her long work history in the credibility assessment. Plaintiff testified that, beginning in 2002, she worked at a restaurant and then as a general light worker at a winery. AT 87-91. She testified that she was laid off in 2014

8

when her job at the winery was discontinued. AT 91.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

////

After listing her severe impairments and alleged symptoms (e.g., dizziness, crying spells, paranoia, memory difficulties, confusion, and social difficulties), the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." AT 27. "In reconciling the evidence, including psychological testing results, mental status examination findings, treatment, including her refusal of Abilify, and reported activities, the undersigned finds the claimant's allegations of mental symptoms are not entirely supported," the ALJ wrote. AT 28. However, the ALJ credited plaintiff's subjective symptoms to some degree by limiting her to "simple, routine, and repetitive tasks," limiting her interaction with others, and ruling out pulmonary irritants "so as to avoid triggering a [panic] attack." AT 28.

As noted above, plaintiff had many unremarkable mental status findings, which the ALJ found to be somewhat inconsistent with plaintiff's claims of debilitating mental symptoms. See Jamtaas v. Comm'r Soc. Sec., 706 Fed. Appx. 401, 402 (9th Cir. 2017) (unpublished) ("medical records showing that [claimant] was cooperative and oriented, had normal mood and affect, and had adequate performance on cognitive tests were inconsistent with the degree of mental health limitations [he] alleged."). See AT 27-28 (discussing mental health record and daily activities). September 2015 treatment notes indicated that she declined to take Abilify, and November 2015 treatment notes stated that she had "[occasional] down moods but overall feels stable." AT 415, 537. February 2016 treatment records noted that plaintiff had lost 50 pounds by "being really careful about her diet and exercising"'; after treatment with Zoloft, she had "leveled out" and felt her anxiety was "doing pretty good." AT 394, 434.

Plaintiff argues that the ALJ erred by failing to factor her "stellar work history" into the credibility analysis. However, courts have rejected the contention that the ALJ is required to address a claimant's "exemplary work history" in assessing her credibility. Greer v. Comm'r of Soc. Sec., 2018 WL 5885942, *7 (C.D. Cal. Nov. 7, 2018) ("An ALJ is not required to discuss the claimant's work history in determining credibility."), citing Rocha v. Comm'r of Soc. Sec., No. 15-1298, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016); see also Smith v. Colvin, No.

11-3045, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) (rejecting claimant's argument that ALJ was required to consider good work history and noting lack of authority "suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or 'good' work history"); Henderson v. Colvin, No. 14-870, 2015 WL 5768934, at *6 (C.D. Cal. Sept. 30, 2015) ("Plaintiff's assertion that his fairly 'consistent and continuous employment for 32 years' is necessarily probative of his credibility is equally unconvincing.").

In Rael v. Berryhill, 2018 WL 1404899, *3 (D. Nev. Feb. 27, 2018), the district court found that the ALJ's failure to explicitly consider a claimant's "exemplary work history" as a factor in her credibility was harmless error. The court reasoned:

> The ALJ does not specifically reference Rael's work record when discussing his determination of Rael's credibility. To the extent that the ALJ's failure to explicitly consider Rael's work record constitutes an error, the error is harmless. The ALJ expressed an understanding of this factor. During the hearing, the ALJ displayed familiarity with Rael's work history (from 1998–2009) as well as the onset date of her alleged disability (September of 2012). (AR 44–45). The ALJ also discussed Rael's work history when evaluating whether she had been gainfully employed (AR 34). The ALJ judge also advances multiple valid reasons for doubting the credibility of Rael's statements about the severity of her symptoms including: inconsistent statements, lack of objective medical evidence, contradictory medical opinions, and Rael's testimony of a lifestyle that was inconsistent with the severity of symptoms alleged. (AR 24–32). With the ALJ basing his conclusion as to Rael's credibility on so many valid factors, to the extent his failure to explicitly state his consideration of Rael's work record might be considered error, it was harmless.

Id.

Here too, as the ALJ expressed an understanding of plaintiff's work history and cited multiple valid reasons for discounting her credibility, the undersigned finds any error in failing to weigh her work history in the credibility determination to be harmless error.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is denied;

////

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  September 10, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/buyck1688.ssi.ckd